# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

| | |
|---|---|
| TUNNELL COMPANIES, L.P. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No.S14A-01-006 |
| | ) |
| BETTY GREENAWALT, | ) |
| JOHN LEYDEN, VINCENT RICE & | ) |
| LAKESIDE COMMUNITY HOME | ) |
| OWNERS' ASSOCIATION | ) |
| | ) |
| Defendants, | ) |
| | |
| TUNNELL COMPANIES, L.P. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. S14A-01-007 |
| | ) |
| BAYSIDE HOME OWNERS' | ) |
| ASSOCIATION | ) |
| | ) |
| Defendant. | ) |

## *MEMORANDUM OPINION*

Upon Plaintiff's Appeal from the Delaware Manufactured Home Relocation
Authority.  Dismissed.

Dates Submitted: August 19, 2014, August 26, 2014
Date Decided: October 14, 2014

Michael Morton, Esq., 1203 N. Orange Street, Wilmington, DE 19801,

Attorney for Plaintiff

James McGiffin, Jr., Esq., Community Legal Aid Society, Inc., 840 Walker Road, Dover, DE 19904, Attorney for Defendants

GRAVES, J.

Tunnell Companies, L.P. ("Tunnell") appeals from the non-binding decisions of the Delaware Manufactured Home Relocation Authority ("Authority").[1] Pursuant to the Delaware Manufactured Home Owners and Community Owners Act ("Act"), owners of manufactured communities, after November 30, 2013, must comply with specific, codified procedures stated in 25 *Del. C.* §§7042-44 prior to increasing the monthly rent of its homeowners above the annual average increase of the Consumer Price Index For All Urban Customers in the Philadelphia-Wilmington-Atlantic City area ("CPI-U") for the preceding thirty-six month period.[2] The application and review of these provisions of the Act is a matter of first impression.

## DISCUSSION

In order to understand this decision, it is necessary to review the applicable statutes of the Act, which mandate the manufactured home community owner ("community owner") "justify an increase in rent ("rent justification").

> Manufactured housing has become a vital source of affordable housing in Delaware, particularly as a homeownership opportunity for low-income households who otherwise would likely not be able to move into homeownership. In recent years

---

[1] Greenawalt ("Lakeside") Record on Appeal [hereinafter "LA-__"] at 387-95; Bayside Record on Appeal [hereinafter "BA-__"] at 439-46. Because both *Tunnell Co., LP v. Greenawalt* and *Tunnell Co., LP v. Bayside Home Owners' Association* address the same issues and counsel are the same in both cases, the Court has consolidated both matters into a joint decision.

[2] *See* 25 *Del. C.* §7042 (a)-(c); 79 *Del. Laws*, c. 63, §6

1

Delaware has experienced a difficult economic climate which has resulted in a crisis in affordable housing availability. Additionally, manufactured home owners make substantial and sizeable investments in their manufactured homes. Once a manufactured home is situated on a manufactured housing community site, the difficulty and cost of moving the home gives the community owner disproportionate power in establishing rental rates. The continuing possibility of unreasonable space rental increases in manufactured home communities threatens to diminish the value of manufactured home owners' investments. Through this subchapter, the General Assembly seeks to protect the substantial investment made by manufactured home owners, and enable the State to benefit from the availability of affordable housing for lower-income citizens, without the need for additional state funding. The General Assembly also recognizes the property and other rights of manufactured home community owners, and seeks to provide manufactured home community owners with a fair return on their investment. Therefore, the purpose of this subchapter is to accommodate the conflicting interests of protecting manufactured home owners, residents and tenants from unreasonable and burdensome space rental increases while simultaneously providing for the need of manufactured home community owners to receive a just, reasonable and fair return on their property.[3]

A community owner may increase rent for any and all 12 month period rental agreements in an amount greater than the CPI-U only if the community owner can demonstrate the increase is justified.[4] To justify such an increase, the community owner must demonstrate: (1) it has not had any health or safety violations that persist more than 15 days after it received notice of the violation during the previous 12-month period; (2) the proposed increase is directly related to operating, maintaining, or improving the manufactured home community; and (3) the increase is justified by at least one of several factors.[5]

---

[3] 25 *Del. C.* §7040

[4] 25 *Del. C.* §7042 (a)

[5] 25 *Del. C.* § 7042 ("A community owner may raise a home owner's rent for any and all . . . rental agreements in an amount greater than the . . . CPI-U. . . provided the community owner can demonstrate the increase is justified for the following conditions: [t]he community owner, during the preceding 12-month period, has not been found in violation of any provision of this chapter that threatens the health or safety of the residents . . . for more than 15 days, beginning from the day the community owner received notice of such violation; and [t]he proposed rent increase is directly related to operating, maintaining or improving the manufactured home community, and justified by 1 or more factors . . . . 25 *Del. C.* §7042 (a)(1)-(2).")

2

One factor to justify an increase in rent is "market rent," which is "rent which would result from market forces absent an unequal bargaining position between the community owner and the home owners."[6] To calculate market rent, a community owner must consider rents charged to recent, new home owners entering the community at issue and/or consider comparable manufactured home communities.[7] For communities to be "comparable," they must be within the competitive area and offer similar facilities, services, amenities, and management.[8]

> When market rent is a factor used by the community owner, the community owner shall provide a range of rental rates from low to high, and when relevant the mean and median; this disclosure shall include 1) whether comparable rents were determined at arms length, each case in which the community owner or related party has an ownership interest in the comparable lot/community; and 2) the time relevance of the data. For purposes of this subsection, "related party" means any of a person's parents, spouse, children (natural or adopted) and siblings of the whole and half-blood. The community owner shall disclose financial and other pertinent documents and information supporting the reasons for the rent increase.[9]

When a community owner seeks an increase in rent above the CPI-U, it must first comply with specific statutory procedures. First, the community owner must give written notice to each affected home owner, the community's home owners' association ("HOA"), and the Authority at least 90 days prior to any increase in rent.[10] Second, if the proposed increase is over the CPI-U, there

---

[6] 25 *Del. C.* §7042 (c) (7)

[7] *Id.*

[8] 25 *Del. C.* §7042 (c) ("One or more of the following factors may justify the increase in rent in an amount greater than the CPI-U: *Market rent.* – . . . rent which would result from market forces absent an unequal bargaining position between the community owner and the home owners. In determining market rent relevant considerations include rents charged to recent new home owners entering the subject manufactured home community and/or by comparable manufactured home communities. To be comparable, a manufactured home community must be within the competitive area and must offer similar facilities, services, amenities and management.")

[9] 25 *Del. C.* §7043(b)

[10] 25 *Del. C.* §7043(a) ("A community owner shall give written notice to each affected home owner and to the home owners' association, if one exists, and to the Delaware Manufactured Home Relocation Authority (the

must also be a meeting between the community owner and the other parties.[11] At the meeting, the community owner must provide written disclosures, in good faith, of all material factors resulting in its decision to increase rent.[12] These material factors include "financial and other pertinent documents and information."[13] Finally, if the parties cannot reach a resolution at the meeting, any affected homeowner, or the HOA on behalf of one or more of the affected homeowners, may petition the Authority for non-binding arbitration[14] in which the Authority will render a decision as to whether the community owner may increase rent in the manufactured community.[15]

If arbitration is sought by one of the parties, the Authority is charged with considering evidence regarding the increases in the costs of operating, maintaining, and improving the affected community.[16] The Authority is to employ the standard codified in 25 *Del. C.* §7042.[17] If the Authority finds that the community owner has not established the requirements laid out in §7042,

---

Authority), at least 90 days prior to any increase in rent.")

[11] *Id.* ("If the proposed rent increase exceeds the CPI-U, the Authority shall schedule a meeting between the parties . . . within 30 days from the mailing of the notice of the rent increase, to discuss the reasons for the increase.")

[12] *Id.* ("At the meeting the community owner shall, in good faith, disclose in writing all of the material factors resulting in the decision to increase rent . . . . The community owner shall disclose financial and other pertinent documents and information supporting the reasons for the rent increase.")

[13] 17 Del. Reg. 270, 6.2 (http://regulations.delaware.gov/documents/September2013c.pdf) ("At the meeting, the community owner shall, in good faith, disclose all material factors resulting in the decision to increase rent, including the financial and other pertinent documents and information supporting the reasons for the rent increase.")

[14] 17 Del. Reg. 271, 6.3, 6.5 (http://regulations.delaware.gov/documents/September2013c.pdf); 25 *Del. C.* §7043 (c). "After the informal meeting, any affected home owner who has not already accepted the proposed increase may, within 30 days from the conclusion of the final meeting, petition the Authority to appoint a qualified arbitrator to conduct nonbinding arbitration proceedings." 25 *Del. C.* §7043(c).

[15] 25 *Del. C.* §7043(g)

[16] *Id.*

[17] *Id.*

it will deny the community owner's request for the rent increase.[18] The community owner, the affected community's HOA, or any affected homeowner is entitled to appeal to the Superior Court on the record with regard to the Authority's decision to grant or deny the rent increase.[19] The statute requires the Court to make an independent decision based on the record below instead of affirming or reversing the arbitrator's decision.[20] To help implement the Act, the Authority drafted several emergency regulations, which came into effect on September 1, 2013.[21]

## PROCEDURAL POSTURE

### Lakeside

On September 27, 2013, Tunnell sent notices to 26 individual homeowners in the Tunnell managed community, Pot-Nets Lakeside ("Lakeside"), stating Tunnell's intent to increase rent for each of the 26 homeowners above the CPI-U.[22] These 26 homeowners' leases were to expire after November 30, 2013.[23] On October 12, 2013, Tunnell convened a meeting to discuss the rental increase. In attendance at the meeting were several of the 26 affected homeowners and Betty Greenawalt ("Greenawalt"), Vincent Rice ("Rice"), and John Leyden ("Leyden"), three members of the Lakeside Homeowner's Association ("LHOA").[24] When the parties did not reach an

---

[18] 25 *Del. C.* §7043(i)

[19] 25 *Del. C.* §7043(c)

[20] 25 *Del. C.* §7044

[21] *See* 17 Del. Reg. 269-74, 1.0-9.0 (http://regulations.delaware.gov/documents/September2013c.pdf)

[22] LA-262-87

[23] LOB, pg. 14

[24] Lakeside Answering Br. [hereinafter "LAB"], pg. 4.

5

agreement, LHOA petitioned for arbitration on November 2, 2013 with regard to 14 of the 26 affected homeowners.[25]  On November 25, 2013, LHOA filed a second petition, seeking to expand LHOA's representation to include all residents whose rent was to be increased.[26]

On December 20, 2013, a hearing was held.[27]  Based on testimony of the parties and a Market Rent Report introduced by Tunnell, arbitrator Richard S. Gebelein, Esq. ("Arbitrator") determined Tunnell had not met its burden of proof in justifying the rent increases.[28]  As such, Arbitrator recommended Tunnell reduce the rent increases to the CPI-U.[29]

### Bayside

Tunnell also sent notices on September 27, 2013, to 48 individual homeowners in Pot-Nets Bayside ("Bayside") whose leases expired after November 30, 2013.  The notices stated Tunnell's intent to increase rent above the CPI-U.[30]  On October 19, 2013, Tunnell convened a meeting to discuss its proposed rent increases with some of the affected Bayside homeowners and representatives of the Bayside Homeowners Association ("BHOA").[31]  When BHOA did not agree to the proposed rent increases at a second meeting held on November 1, 2013, it petitioned the Authority to arbitrate the matter.[32]  The arbitration took place on January 6, 2014, and was conducted

---

[25] LA-388

[26] *Id.*

[27] *Id.*

[28] LA-392-95

[29] *Id.* at 395

[30] BA at 209-57

[31] Bayside Answering Br. [hereinafter "BAB"], pg. 4

[32] BAB, pg. 5; BA-439

by Arbitrator.[33]  Here, upon a motion to exclude, Arbitrator excluded the Market Rent Report from evidence since neither it, nor the information it contained, were disclosed at the October 19, 2013 meeting.[34]  Based on testimony of the parties, Arbitrator determined Tunnell had not met its burden of proof in justifying the rent increase.[35] As such, Arbitrator recommended Tunnell reduce the rent increase to the CPI-U.[36]  These appeals followed.

## STATEMENT OF FACTS

The Pot-Nets Communities are six private, separately owned manufactured communities subject to the provisions of the Act.[37]  Tunnell is the sole managing partner of each of the six communities.[38]  Lakeside and Bayside are two of the six communities managed by Tunnell.[39]

Prior to the Lakeside October 12, 2013 meeting, Tunnell commissioned a report to determine if a rent increase above the CPI-U was justified.  Tunnell hired Laurence Moynihan ("Moynihan") to evaluate the 26 affected Lakeside properties along with several other communities in the area to determine market rent,[40] a codified "factor" that can justify a rent increase above the CPI-U.[41]  At the October 12 meeting, Moynihan's report was reduced to a color-coded map that only stated the

---

[33] BA-439

[34] *Id.* at 445

[35] *Id.* at 439-46

[36] *Id.* at 446

[37] LOB, pg. 6

[38] *Id.*

[39] LA-103; BAB, pg. 4

[40] *See* 25 *Del. C.* §7042 (c)(7)

[41] LOB, pg. 14-15

7

proposed rent increases for the affected lots, but did not contain any analysis as to how the proposed rent was determined.[42]

Similarly, Tunnell convened a meeting with the affected Bayside homeowners and BHOA on October 19, 2013.[43] Tunnell also used Moynihan to evaluate the 48 affected Bayside properties.[44] At the meeting, Tunnell conveyed to the other parties that a Market Rent survey, which was later converted into the Bayside Market Rent Report, led Tunnell to determine that an increase in rent was required.[45] Though a homeowner asked for a copy of the information at the meeting, one was never disclosed, despite representatives of Tunnell having a copy present.[46] Instead, like at the Lakeside meeting, the results of the report were distilled into a color-coded map.[47]

## STANDARD OF REVIEW

A community owner, HOA, or any affected home owner may appeal the non-binding decision of the Arbitrator to the Delaware Superior Court.[48] The appeal is on the record without a trial *de novo*.[49] The Court must independently address arguments of the parties as to whether the record created in the arbitration is sufficient to justify an increase in rent above the CPI-U.[50] The

---

[42] LA-117

[43] BA-439

[44] BAB, pg. 5

[45] BA-93-101

[46] *Id.* at 99, 97

[47] *Id.* at 96, 156

[48] 25 *Del. C.* §7044; 17 Del. Reg. 273, 8.1 and 8.2

[49] 25 *Del. C.* §7044; 17 Del. Reg. 273, 8.2

[50] 25 *Del. C.* §7044

General Assembly specifically deviated from the standard of review traditionally applied to administrative agencies. Thus, the Court makes a decision *de novo*, exclusively using the record created during the Authority's non-binding arbitration. Simply put, the Superior Court makes an independent decision. Superior Court does not affirm or reverse the arbitrator's decision

## ANALYSIS

Tunnell makes two primary arguments. Tunnell first argues there is no justiciable claim due to LHOA's and BHOA's lack of standing. Second, Tunnell argues it complied with all statutory requirements and has met its burden of proof in justifying why the affected homeowners' rents in Lakeside and Bayside should be increased above the CPI-U.

### Standing

17 Del. Reg. 269, 2.0 defines "designated representative" as "an individual authorized to act on behalf of any party, provided said authorization is in writing and signed by the party on whose behalf the individual is authorized to act." It defines "party" as "a community owner, *an* [sic] *HOA*, and any leaseholder affected by a proposed rent increase (emphasis added)."[51] If the community owner decides to increase the rent above the CPI-U, 17 Del. Reg. 270, 5.0 requires "[n]otice of the time, date, and place of the [required] meeting . . . be provided to the community owner and the HOA. *If no HOA exists,* notice . . . shall be provided to the affected leaseholders, *or their designated representative* (emphasis added). . . ." 17 Del. Reg. 271, 6.5 states "if all of the affected parties are unable to resolve the dispute [as to the increase in rent] . . . *any party* who has not agreed to a resolution of the issues may . . . file a petition . . . requesting the Authority to appoint a qualified arbitrator to conduct non-binding arbitration (emphasis added) . . . ." Likewise, 25 *Del. C.* §7043

---

[51] 17 Del. Reg. 269, 2.0

(c) states "after the informal meeting . . . the Homeowners' Association on the behalf of one or more affected homeowners who have not already accepted the proposed increase may . . . petition the Authority to appoint a qualified arbitrator to conduct nonbinding arbitration proceedings."

The Delaware Code and the Emergency Regulations promulgated by the Authority clearly contemplate a HOA having a direct role in negotiating rent increases for affected leaseholders. §7043 (c) does not require the affected leaseholder be a member of the HOA for the HOA to be involved in the negotiation process, and the Emergency Regulations equate the HOA as an automatic designated representative.[52] Finally, because a HOA can be a "party" under 17 Del. Reg. 269, 2.0, LHOA and BHOA are both entitled to petition for arbitration under 17 Del. Reg. 271, 6.5. As such, a signed, written authorization by the affected home owners was not necessary for LHOA and BHOA to have standing to represent the affected Lakeside and Bayside homeowners.[53]

### Tunnell's Compliance with §7043

Based on the record below, the Court will not undertake any analysis as to whether an increase in rent for the 26 lots in Lakeside and the 48 lots in Bayside is justified. Tunnell argues that based on the "uncontroverted" evidence at the Lakeside and Bayside arbitrations, the rent increases are justified.[54] That may or may not be the case; however Tunnell did not comply with the statutory mandates of 25 *Del. C.* §7043(b). The record indicates Tunnell only provided a map of the affected lots along with each lots' proposed increase in rent at the October 12 and October 19 meetings.[55]

---

[52] *See* 17 Del. Reg. 270, 6.1.

[53] LOB, pg. 3; BOB, pg. 4

[54] LOB, pg. 28; Bayside Opening Br. [hereinafter "BOB"], pg. 30

[55] LA-116-17, 261; BA-96, 156

The Market Rent Reports, the information they contained, and the final analyses were not disclosed.[56] These reports captured the "definitive investigation and analysis work of [Moynihan], and detailed in a specific and easily comprehendible fashion what [Moynihan] considered and how he obtained the market rent rate for [each] rental lot."[57] 25 *Del. C.* §7043(b) mandates that all material factors be provided in good faith. The statute goes on to state:

> [w]hen market rent is a factor used by the community owner, the community owner shall provide a range of rental rates from low to high, and when relevant the mean and median; this disclosure shall include 1) whether comparable rents were determined at arms length, each case in which the community owner or related party has an ownership interest in the comparable lot/community; and 2) the time relevance of the data. For purposes of this subsection, "related party" means any of a person's parents, spouse, children (natural or adopted) and siblings of the whole and half-blood. The community owner shall disclose financial and other pertinent documents and information supporting the reasons for the rent increase.[58]

Throughout its briefs, Tunnell asserts that Moynihan's reports on comparable manufactured home communities led it to determine that it needed to increase rent above the CPI-U for the 26 Lakeside lots and the 48 Bayside lots, and what the rent increase for each of the affected lots should be.[59] This explicitly indicates that such reports were material factors.

Tunnell argues disclosure of such information is not condition precedent for a community owner increasing the homeowners' rents.[60] Tunnell reasons that disclosure of the reports at the required meetings would be repetitive, and thus not required since they could later be disclosed at

---

[56] LA-116-17; BA-97-100

[57] LOB, pg. 16; BOB, pg. 13

[58] 25 *Del. C.* §7043(b)

[59] LOB, pg. 1, 2, 14-16; BOB, pg. 24-25

[60] LRB, pg. 18; BRB, pg. 18

11

arbitration.[61]  But Tunnell overlooks the public policy mindset of the General Assembly that Arbitrator Gebelein observed in his Bayside arbitration decision.[62]  Further, by requiring an informal meeting between the community owner and affected homeowners in which all the proverbial cards are on the table prior to seeking arbitration, and ultimately Superior Court review, the legislature believed the parties could settle their disputes without involving the courts, saving on judicial economy.  A reading of 25 *Del. C.* §7043(b), makes it apparent that disclosure of all relevant material information, no matter how repetitious it may be in the future, is mandatory.  In attempting this "drive by" on the affected homeowners and their respective HOAs, Tunnell sought to increase rent with minimal resistence by keeping the other parties in the dark.

The statute is clear. Tunnell was to disclose all material factors, in writing and in good faith, at the October 12 and October 19, 2013 meetings.  Tunnell's failure to disclose the Market Rent Reports, which it indicates were material factors in reaching its decision to increase rent, prevents the Court from making a determination as to whether the rent increases for the Lakeside and Bayside lots are justified.  Thus, due to 25 *Del. C.* §7043 (b)'s requirement that "[a]t the meeting the community owner *shall, in good faith, disclose in writing all of the material factors* resulting in [its]decision to increase the rent (emphasis added),"[63]  Tunnell has failed to justify an increase in rent above the CPI-U average for the 26 affected Pot-Nets Lakeside and the 48 affected Pot-Nets Bayside

---

[61] LRB, pg. 18; BRB, pg. 18

[62] "The purposes of the requirement under the law for full disclosure of all reasons and documentary support for a rent increase are clear.  First, full disclosure allows the home owners the opportunity to understand the Community Owner's reason for raising rents in excess of the CPI-U and therefore encourage s [sic] agreement if the increase is justified.  Second, this requirement is designed to level the playing field at arbitration should that remedy be necessary." BA-442.

[63] 25 *Del. C.* §7043 (b)

lots.

## CONCLUSION

Based on the above, Tunnell's request for a rent increase above the CPI-U for both communities is **DENIED**.

**IT IS SO ORDERED.**

*/s/ T. Henley Graves*

_____

T. Henley Graves, Judge